Next case this morning is United States v. Craig A. Grimes Mr. Goldberger? I missed that crank. Good morning and may it please the court. My name is Peter Goldberger. It's my privilege this morning to represent the appellant, Craig Grimes, who was the defendant below. If you would, with the court's permission, I would like to reserve two minutes. Rental. Thank you. The plea agreement in this case contains no enforceable waiver of the right to appeal. A waiver clause that fails to exempt the question of ineffective assistance of the very lawyer who negotiated that agreement and is then the defendant at the time of the plea places that lawyer, by its design, in the impossible conflict of interest situation that I described in the brief. She is put in a position, necessarily, of having the obligation to advise her client whether to accept a plea on certain terms, which include the question of whether to waive any question of effective assistance of that very lawyer, pre-existing or potentially future, at the sentencing hearing. The defendant is clearly entitled, under Supreme Court precedent, to the effective assistance of counsel under the plea phase of a case. Effective assistance of counsel under Supreme Court precedent, by definition, means conflict-free counsel. Conflict-free counsel means not just actual conflict – it doesn't require showing that there was, in fact, ineffective assistance occurring or to occur in the case – but the clear potential for conflict of interest. Conflict inheres in that situation and, therefore, inheres in that condition of the agreement. Where's the adverse effect here? Where's the problem? How is this client deprived in this case with a waiver of this sort? Where he's not looking to withdraw the plea? Yes. Adverse effect, in the context of ineffective assistance due to conflict, means only that the lawyer takes action in the case that is subject to the conflict. It doesn't mean the client is demonstrably harmed. It's not prejudice in the usual strictness of the law. You're asking for a per se rule. Yes. It's a per se rule under the circumstances that exist in this case. Now, my concern is, if we consider what you just said is sort of a hermetically sealed logical position, it raises some particularly challenging questions, I think, in light of what's going on with Lafler and Frye and the new era in which we're entering here in light of those decisions. I don't disagree. But how do you tie that argument to the appellate waiver? Are you arguing the next case, I guess, is sort of what I'm – or perhaps this case in its next iteration? I'm not quite sure what you mean. I'm always trying to think about the next case. Well, I'll try to be more explicit. And the last case. As I read your brief, you're making an argument, as I understand it, that a lawyer cannot effectively advise a criminal defendant about a waiver of that own lawyer's ineffectiveness. There's just an inherent conflict there. Correct. But I'm not understanding how that inherent conflict, which may well pollute or vitiate the efficacy of the post-collateral attack waiver, how in any way that vitiates or pollutes the appellate waiver. Yes. Because the waiver is contained in a single agreement that the lawyer must advise about. So the lawyer is advising on whether to accept the whole waiver, which is a single paragraph, two-part waiver, to accept this or not. It affects the validity of that waiver because it contains the collateral attack waiver. But, of course, it also contains an appellate waiver vis-a-vis claims of ineffective assistance which are cognizable on direct appeal, of which there are some. Not a great many. Don't always recognize them. But we do recognize them. I think I have a string side, almost a page long in my brief, of cases where this Court has recognized such claims. Going back 30 years and to as recently as last year. So those claims are also the lawyer is tying her hands, the client's hands, vis-a-vis cognizable claims on appeal, which may exist but which the lawyer cannot advise the client about. So I'm not saying there's nothing that can be done. I leave open the possibility of whether a claim of this, a waiver of this kind, could be entered into knowingly and intelligently if the judge were to conduct a proper colloquy and ascertain that the defendant had a full understanding and had made a knowing, intelligent waiver that included full knowledge. And I do suggest that there would have to be at least an opportunity, if not a provision of independent advice. There'd have to be another lawyer brought in, which does happen in conflict waiver situations all the time, where a defendant wants a certain lawyer to represent him or her at trial. Judge perceives a conflict. Perhaps the government suggests the possibility of a conflict. The judge will often appoint the federal public defender or someone from the CJA list to conduct a private interview with the client for 45 minutes, an hour, to make sure the client fully understands what's entailed in going ahead with the lawyer that they've chosen in terms of what they may be giving up in the future. I've seen that happen. I've been that lawyer and been the subject of that, both. So there are many things. But this would become a regular practice, then, every time the government would insist upon a waiver of this kind. What should become a regular practice is a carve-out. It's very simple. The solution is very simple. The government should not seek. And, in fact, many of the ethics opinions say a prosecutor should not seek. But as a matter of law, the government should not seek, and no defense lawyer should agree to, a waiver that does not contain an exception of this kind. The court could, you know, how can- Go ahead. I'm sorry. Does the Eastern District no longer insist on this? That's right. I think, confronted with a number of appeals from me and from other lawyers pointing this out and objecting, the Eastern District of Pennsylvania now exempts these claims. And is this happening in other districts that you- I haven't heard that it is, but I wouldn't be surprised if it spreads. I think the Eastern District is influential in other U.S. attorneys' offices. Well, I think eight states' ethical bodies have come out against the practice of insisting on the waiver, too, as I understand it. That's true, but the ethics opinions are mostly about whether it's ethical for the defense lawyer to counsel it and advise to it, advise it. Only, I think, two or three of them say, and it is unethical for the prosecutor to negotiate for it. But why- And the government resists being, despite Section 530b, resists being subject to state- Well, let's suppose, for purposes of argument, it's a good practice not to ask for it. That doesn't really help us with the constitutional question. What- If a defendant can waive an actual conflict, think of a RICO case or a mob trial or something. I mean, you know- I'm referring- Hi, I'm your lawyer, you know. Those are the cases I'm referring to. Low-level mobster, you know. I mean, if those sorts of waivers have been upheld, then they seem to be more onerous on the defendant than this sort of waiver, no? Not without judicial inquiry and often the provision of independent advice. But why isn't the portion of the case law that talks about when this court would decline to enforce, if it's voluntary, et cetera, you know, all the factors, right? Mm-hmm. Unless there's a miscarriage of justice. Why doesn't that provision provide this requisite protection to the defendant? Well, I was about to suggest Judge Hardiman's question earlier, part of Judge Hardiman's and it responds to your question as well, that the court could declare that the inclusion of such waivers without, at least without a thoroughgoing colloquy and a clear knowing intelligent waiver is a miscarriage of justice. No, but my question is a little bit different, is why isn't it protected through that inquiry if the court evaluating the enforceability of a waiver among its duties is to make sure that it was plain from the language and that it was knowing and voluntary unless there was a miscarriage of justice? Why isn't that inquiry sufficient upon review? That is, whether or not this counseled plea, in fact, resulted in a miscarriage of justice rather than a blanket. Yes. It would be a miscarriage of justice to have such a waiver. Do you understand the distinction I'm drawing? Well, I think I do. We'll find out. Okay. But my first answer is the one you just rushed off, which is it is a miscarriage of justice to put the defendant in a position where he or she does not have the conflict-free effective assistance of counsel in the negotiation of the plea. That is a miscarriage of justice, to be denied Sixth Amendment rights at a critical stage of the proceedings. I think what you're asking also is that there should be some colorable showing that there was ineffective assistance. Well, the fact that if there's a challenge to the enforceability of a waiver, one of the things the court needs to examine is we will enforce unless there would be a miscarriage of justice. And so if you have a scenario like your client's that has this, we'll call it the unitary waiver for both avenues of challenge, that, in fact, there is an avenue for protection. That is, if something, a miss occurred, not just the possibility that someone who negotiates such a waiver may get a benefit by protecting a later challenge to whether they were effective or not, isn't there still protection in the law for the scenario you're most concerned about, which is this client's interests get subverted in some ways? There is some protection, but not the same protection. And so it's not a constitutionally sufficient protection, because the standard, and this is what's wrong with the Fifth Circuit opinion that I criticized in the reply brief, is the lens of ineffective assistance is a higher and more onerous standard than simply showing that there was error directly. So the defendant may be waiving. There are plenty of people who enter into waivers, plea agreements with waivers of appeal, who get almost nothing out of it other than losing their chance to raise error or plain error in a sentencing appeal that this court is often receptive to. So what do you think happened to your client here? By this alleged conflict. You're presuming there was a conflict. That's your position. There is a conflict. I understand your position. The question I have is tell me how your client was affected here. What would have been different? I'm not saying that Attorney Miller had some other kind of conflict of interest. No, no, I'm talking about the only one that you ascribed to him. How would it be different for your client here? How was he deprived? What happened that he wouldn't get to get? Is the only thing that he wouldn't have because of this waiver an opportunity to challenge the disparity argument? Is that the only consequence? He may have lost the opportunity to make a winning disparity argument, although I suggest that he hasn't. Okay. But he could have lost that opportunity. But he didn't. Here we have someone who advocated. Well, let's play off the hypothetical a little. Let's assume that Ms. Miller, let's assume for a minute that she was concerned about her own reputation. Let's assume that she did something wrong in working up the case. Again, I know that. I know Ms. Miller and that would be odd, but you never know. And so do I. You never know. Let's assume she did. And let's also assume that she encouraged her client to sign this agreement with the IAC waiver because she was concerned about her own reputation. If we, in this case, uphold the appellate waiver, as we have done in so many other cases, doesn't then this result in a habeas petition on behalf of your client in which the facts, as I just stated in my hypothetical, are all alleged. There's discovery. Ms. Miller swears under oath, yeah, you know, I had, I was overwhelmed that I did these things. And your client wins on, then perhaps, you know, the ineffective assistance waiver is deemed to be invalid due to an actual conflict of interest of counsel that was prejudicial to your client. And the case begins anew. Well, that's not the way conflicts of interest are raised, litigated, and enforced. Conflicts of interest, it doesn't depend on the lawyer subjectively saying, I felt I was in a conflict, or I didn't feel I was in a conflict, or it wasn't bothering me. I could put that aside. But I think what the judge is asking you is simply that, assume you had someone who was a confessor. Right. Who confessed to the conflict, if there were one. I mean, we see that all the time in capital cases. It's not that unusual for a lawyer to come forward and say, I was ineffective. So I guess my question is, aren't you, are you in the game, so to speak, on a habeas position? Why, why should, let me ask it another way. Take the IAC waiver out of this plea agreement. Do you have a case for not enforcing the appellate waiver? We didn't raise one. Actually, that's not so. We would also, we might have been here, and I'm not sure whether we would or wouldn't, but we could have been here simply saying, the error is so egregious and the impact is so large of the failure to consider the disparity argument at sentencing, when it was presented so well by Ms. Miller, that there was a miscarriage of justice in that failure to consider the disparity argument and the imposition of a national record sentence in a case of this kind. But how do you get over the appellate waiver? I mean, is there, I thought you were saying. Oh, I'm sorry. Leave the appellate waiver. No, no, take out the IAC waiver. If we take out the IAC waiver, this is yet another one of these cases we see on a weekly basis, where defendant appeals, government files a motion for summary affirmance. Clients come to me, I mean, if you want to talk sort of hypothetically, fill out the record. I do appeals full time.  And I say, you realize you waived your right to appeal in this thing you signed here? I did? Okay, then we talk about that. I mean, that is actually the typical conversation with the client. And then we talk about it, and more often than not, we say, we can't help you. Right. We take a review fee, we don't take an appellate fee, and it's over. But sometimes I say, there is a colorable argument, and I might have said that here, to meet the Third Circuit standard of miscarriage of justice and a merits argument on the failure to consider the disparity. And we might have said that here. Was it Mr. Dr. Grimes, you know, didn't understand his rights? He didn't know what he was doing when he waived his appeal? No, no, no, not that kind of exception. The miscarriage of justice exception only doesn't require any of that. It only requires. The bottom of the guideline sentence was a miscarriage of justice? Yes, yes. When the government could not come up with more than one case with all its resources on a national survey, using Department of Justice resources, came up with one case in the whole country ever where somebody got a five-year, a comparable sentence, a five-year sentence, and that person's case was seven times larger than Dr. Grimes? All right, but you. And all the others are probation to one year? Okay, but getting back to this case instead of the hypotheticals, that's not the way the case came to us. You haven't cited anything to indicate that Ms. Miller could have or should have done something. That's right. Or that her performance was substandard vis-a-vis her mitigation arguments? Well, that's correct. We are not alleging that kind of ineffective assistance, and I don't see a basis for it from what I know now. And I want to make clear that when I said he won, meaning he had Grimes, Grimes had counsel who advocated in paper and orally beautifully on his behalf. Yes, one of the best lawyers in Pittsburgh. So I wanted to make clear when I said he won, that's what I meant. That's right. So then let me come back, if I could, to what to me is so difficult about this case is what support do you have for the notion that what appears to be a garden variety appellate waiver case within guideline sentence, et cetera, is somehow radically, and I mean that in the literal sense of the word radically, it's radically altered by the mere existence of an IAC waiver. Is there any case support for that? And you use the word intertwined. They're so intertwined that it requires a different result than the typical case. I think that that conclusion follows inexorably from the Supreme Court's decisions and this Court's decisions on the entitlement to effective assistance of counsel at the plea stage, the definition of effective assistance as presupposing a conflict re-counsel, and the fact that others, other lawyers, other judges have not previously recognized that is not an argument against it. It is perfectly clear to me, based on the argument that we're making, that this is a serious mistake that has been made for several years that should be fixed. And yes, it is systemic. It is easily solved. The government can get appeal waivers where it's in its interest, but it ought, it has to exclude at least the question of effective or ineffective assistance of the lawyer who negotiated the agreement and represented the defendant at the time of the plea. I would like to see broader ways, but that's the minimum requirement. And I hypothetically leave open the possibility that there would be such a thing as a colloquy that could, would allow for such a waiver to be included. But I don't see the public interest in it for either side. It's wrong. It's a miscarriage of justice. Supervisory power or a construction of a miscarriage of justice exception should lead this Court to prohibit this provision. Prospectively, in Mr. Grimes' case, it should result in consideration of his issue on the merits. Okay. Thank you.  We'll hear you on rebuttal. Thank you, Mr. Goldberger. Mr. Cerruti. Good morning. May it please the Court, Steve Cerruti on behalf of the United States. The United States position at this point, primary position, is right in line with the questioning that you were giving Mr. Goldberger a moment ago, Judge Hardiman. He is fighting a battle too soon. This is most appropriately an issue that should be brought up in a future 2255 as opposed to here on direct appeal. Because that is where we are. We are on direct appeal. And the waiver provision that Mr. Grimes has the most problem with is, of course, the collateral appeal. Now, this Court has said that when looking at either a direct appeal or a collateral appeal or collateral motion, collateral proceeding, and a waiver of both of those two separate rights, that there has to be an inquiry into whether the waiver was knowing involuntary. So even were this to go back to the district court and Mr. Grimes files a 2255, the district court is going to have to look at, and the United States is not going to have a problem with the district court looking at whether any alleged conflict of interest with advising about the waiver of collateral, collateral waiver, goes to that knowing involuntary nature of the waiver. Is the burden on the defendant greater though in that circumstance than on direct appeal? I think the burden is going to be the same. You're in both cases, both on the direct appeal and in the 2255, you're going to have to show that it was not knowing involuntary for some reason. And in order to, I think the burden is actually more difficult for Mr. Grimes now to show that a waiver provision, the collateral waiver provision, somehow a taint that in yours to that, and the United States, of course, doesn't concede that there is, somehow bleeds over into a separate waiver provision, the waiver of direct appellate rights. The, as pointed out. What's your answer to that question about, I asked Mr. Goldberger, is there any authority for this notion that the two waivers are intertwined or codependent? Do you have any authority going your way on that issue? Well, I don't know of any direct authority that says these two things are explicitly separate. That being said, in Mabry, this court looked at a middle district plea agreement, which had both the direct appellate waiver and the collateral waiver contained in the same paragraph. And Judge Rendell, in her opinion, certainly proceeded and used wording which would indicate that the court in Mabry looked at those two provisions as being two separate provisions. And no different than you would find two separate provisions in a contract, which is, of course, what a plea agreement is. You could take out either one of these waivers, either the direct appeal waiver or the collateral waiver contained in this plea agreement, and the remaining waiver would be unaffected. The language would be complete in and of itself. They are each independent. The mere fact that they are located within the same paragraph doesn't make them unitary, doesn't make them intertwined, doesn't make them inseparable. So the other argument that Mr. Grimes raises, of course, is the fact that there is the potential for ineffective assistance of counsel claims being raised on direct appeal. Those are extremely rare. One wasn't raised in this case. But if you say then that that is going to give rise to the same conflict of interest, then not only do you have to have a carve-out for the ineffective or collateral waiver, you're going to have to have the same carve-out for any appellate waiver. And it's also going to call into question the whole plea, whether it contains any waivers or not. As this Court and other circuits have made clear, the entry of a plea waives any non-jurisdictional issues that might have arisen prior to that. So if you have a suppression hearing, and there's ineffective assistance of counsel during the suppression hearing, but ultimately the defendant goes into a knowing and voluntary plea, even if there's no appellate waiver, even if there's no collateral waiver, they have just waived the right to pursue ineffective assistance of counsel claims. Is that true after Lafleur and Frye? I mean, it sounded like you were making a Tollett argument or a Mabry, Supreme Court Mabry, that the guilty plea vitiates any ineffectiveness that preceded it. Isn't that all under question now in light of Lafleur and Frye? I don't believe so, because those will go towards the advice and given the actual plea. And my argument is if the plea itself is found to be just fine, then maybe potential ineffective assistance that counsel isn't aware of and the defendant isn't aware of may be waived. I'm not sure I understand that last point you made. When you say if the plea agreement's fine, what do you mean by that? Well, if the plea agreement is... You mean if it's knowing and voluntary? Yes, if the plea agreement is knowing and voluntary. But if it's knowing and voluntary, but the lawyer botched it... Not the plea itself, not the negotiations on the plea. I'm talking about, my example would be, for example, as I said, a suppression hearing. If there has been a proceeding prior to the plea negotiations where there has been some ineffective assistance contained to that proceeding, but then the advice on the plea agreement is absolutely fine and knowing and voluntary. So it would be your position then that this conflict that's being described would exist every time one starts to negotiate a plea because you're advising your client to plead is tantamount to telling... Also, you're not going to be able to challenge my effectiveness prior to, from my conduct before you actually enter this plea. If you take the theory that Grimes is putting forward here, that anything that could touch upon ineffective assistance in any way gives rise to this, no matter how remote, and it's a very remote likelihood in a direct appeal sense. It's actually much less remote when you're just talking about plea in general. And when there is an avenue through 2255 to come back to the district court and let the district court have a hearing on the knowing and voluntary nature, address the conflict of interest, which this court in Morena has said, like any other claim, belongs most appropriately in a 2255 proceeding, then the court can develop a record, can determine if there was an adverse effect or a lapse in representation that resulted from this conflict or alleged conflict. So from your point of view, on direct appeal, the record here would not support the existence of a conflict? No, because the United States believes the direct appeal waiver is completely separate from the collateral waiver. Any issues that may be raised, and again, the United States doesn't concede that they are, any issues raised by the wording of the collateral waiver in this case don't bleed over to affect the direct appeal, and so therefore the direct appeal should be enforced. And if Mr. Grimes wants to continue to pursue the conflict of interest claim, he can do so in a 2255, and the district court will look at it, and maybe we'll end up back here talking about this again in a year or so. So you're asking us, don't weigh in on the enforceability of the collateral TAC component because we're not in collateral TAC land? Exactly. And if there are no further questions on that or the disparity issue, the United States would simply ask to have this court enforce the direct appeal waiver. Mr. Goldberger raises some interesting questions about ethics rules, state ethics rules, and you do treat them in your brief. But tell us again what your position is on that. Well, the position is that, first of all, to the extent that you have state ethics opinions that are equating ineffective assistance of counsel with the malpractice which is discussed in those ethics rules, we think that that's an error. We think that that is, that's not accurate because you cannot simply use those two interchangeably. Pennsylvania certainly does not use them interchangeably. While ineffective assistance of counsel may be evidence in favor of malpractice, it is not determinative and you can pursue a malpractice action against a criminal attorney even if there is no ineffective assistance of counsel claim. So we have two separate issues that unfortunately have been conflated by a number of state ethics boards. Also, and this is similar to the ineffective assistance of counsel waiver problem that you run into with pleas in general if you take the interpretation that Mr. Grimes urges and that we talked about, you run into the same problem if you begin to equate ineffective assistance of counsel with malpractice. In virtually every state that talks about the way in which you are able to prove malpractice against a criminal defense attorney, one of the things that is required is that there be some sort of innocence or that they would have otherwise been found innocent had it not been for the ineffective assistance. Well, the moment that you plead guilty, you are almost completely, if not completely, destroying any opportunity that you have to assert, wait, wait, no, I was innocent, innocent and I was wrongly convicted. Therefore, again, leaving out waiver provisions, if you take the interpretation of the ethics rules the way that those states who have found there to be a conflict would have it, then you have a problem with pleas in general, once again, because you are giving up, an attorney is advising his or her client to give up the right to pursue a malpractice action the moment he begins discussing whether it's appropriate to plead guilty to the crimes that they are charged with. So, from your point of view, regardless of whether the effective assistance that counsel claims in the waiver, it doesn't matter for a malpractice claim in Pennsylvania, because once the plea is intact and there is an adjudication of guilt, the ability to bring a malpractice claim disappears. Effectively, yes. Thank you. Again, the United States would ask this Court to dismiss this appeal based on the existence of the direct appeal waiver or in the alternative find that there was no error on the disparity issue. Thank you very much. Thank you, Mr. Cerruti. Rebuttal, Mr. Goldberg. Of course, we've never said that the ethics opinions are interchangeable within an effective assistance claim. We laid it out quite clearly in the brief, but they are relevant. That's why we didn't lay them out, is that the Supreme Court says that you refer to practice norms, ethical and standards of practice, in determining what is effective and ineffective assistance. They're not determinative, but they're highly relevant. Second, with respect to malpractice in Pennsylvania, Judge Schwartz, it is an element of a defendant's successful claim, I'm sorry to say, that the defendant had innocence established in a direct or collateral proceeding. So the fact that a person is pleaded guilty does not mean that they could never bring a malpractice action, but they would have to have brought a successful PCRA or state post-conviction or 2255, which resulted in an adjudication that would later be described as a finding of innocence. I think that's not fair to defendants, but that's the law in Pennsylvania. More central to the argument that we're making, the existence of the collateral attack waiver is the principal source of the conflict, but the conflict exists at the present time. The conflict exists because the waiver is there when the lawyer advises the plea. So it is not possible to postpone the consideration of the issue that I'm raising to adjudication on collateral attack, because the argument is that the incipient potential conflict of interest exists because of the possibility of ineffective assistance being a claim on is the principal issue raised on collateral attack, and that collateral attack is being discussed now at the time of entry of the plea. Finally, I'm not so sure. I'm not sure I appreciate that argument. Maybe you could help me with it, because as I understand the conflict that you're positing, it's a conflict vis-a-vis the IAC waiver. It's not some sort of general conflict like I'm representing your co-defendant. I agree with that. Okay. That's right. But then why is that availing if it's, again, how do you make that connection between what we will assume for sake of argument is an invalid IAC waiver with the typically enforced appellate waiver? Because it's the package of whether to accept that broad clause in the plea agreement that is presently under consideration by the lawyer and about which the client needs effective and unconflicted advice before entering the guilty plea. I'm not so sure, by the way, that I agree with my colleague on the other side that a guilty plea waives prior ineffectiveness of the lawyer who counseled the plea. I don't believe I saw in his brief a case in which such a claim was raised. I thought he clarified it to say that if it was ineffective on some prior proceeding, but he was positing no ineffectiveness vis-a-vis the plea negotiations in the plea agreement.  Yes. And I'm not so sure that that's true, that it seems to me that if a person brought the collateral attack, claimed that the lawyer was in effect, that after... At the suppression motion. Hey, if I would have won my suppression motion, I never would have pleaded guilty. Correct. And I was represented at the suppression motion by the same nincompoop who represented me and who then advised me to plead guilty rather than to negotiate a conditional plea that would allow me to appeal the erroneous suppression hearing. Okay. Anything else? Thank you very much. Thank you, Mr. Goldberger. The court thanks counsel for both sides for the truly expert argument and briefing. We will take the matter under advisement. Thank you.